## Snively's Executors *versus* Stover and Wife.

1. Snively leaving six children, devised to each of four of them a tract of land at a value which he fixed, their respective shares of his estate to remain in the land, as provided in his will, and the balance to be paid in annual instalments without interest, covering a number of years, the devisees to take possesssion shortly after his death ; he gave to the other two children, daughters, all the payments to be made by the devisees and directed that within one year from the 1st of April after his death a distribution of his estate should be made, the amount including advancements to his children being ascertained, his debts, &c., paid, the residue should be equally divided amongst all his children, the advancements, &c., to be accounted for without interest " so that each of my children shall share and share aliko." By a codicil he directed when the amount of his estate should be ascertained, $1500 should be deducted from it and divided between the two daughters and the remainder equally divided among all his children so that the daughters, "will apparently receive each $750 more than my other children." *Held*, that $1500 was not payable presently, but in a due proportion with the legatees' proportion of the annual instalments for which the will had made provision.

2. Under the will the shares of the two daughters were payable out of the valuation of the land as the payments by the devisees accrued.

3. If two clauses in a will are irreconcilable the latter is to be adopted ; but not if effect can be given to both consistently with the main design of the testator ; nor if the clauses have not relation to the same subject-matter.

May 12th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Franklin county:* May Term 1875, No. 61.

This was an amicable action of debt, instituted April 15th 1874, by Andrew S. Stover, and Ann Elizabeth, his wife, in her right, against Lemuel Snively, Jacob S. Snively and J. P. Bishop, executors, &c., of Samuel Snively, deceased. It was subsequently agreed that William H. Snively and Almira Bishop (wife of the said J. P. Bishop), with the other named executors, be made parties to this suit *as devisees* of the land of the decedent, charged with the legacies which are hereafter stated, and which are in controversy in this suit. ·

A case was stated containing these facts:—

Samuel Snively, of Antrim township, Franklin county, died on or about the 20th day of December 1872, leaving six children, to wit: Lemuel, Jacob S., Almira, intermarried with J. Philip Bishop, William Henry, Ann Elizabeth, intermarried with Andrew S. Stover, and Susan Snively; and seised of several tracts of land, situate, &c., and possessed of a small personal estate. He made a will dated July 15th 1872, and proved December 20th 1872, devising, amongst other things, as follows:—

" 2. I will and devise to my son Lemuel, his heirs and assigns for ever, the tract of land * * * containing one hundred and thirty acres and fourteen perches, neat measure, * * * which I value to

him at sixty dollars per acre, to be paid as follows, to wit: after deducting advancements heretofore made to him from his share of my estate, the balance of his share to remain in the land, and the remainder to be paid in ten equal annual payments, without interest, until they become due, the first payment to be made in one year from the 1st day of April next after my decease."

3. He devised to his son, Jacob Samuel, in fee another farm, containing one hundred acres, at sixty dollars per acre, subject to precisely similar provisions, except that the balance of the valuation was to be paid in eight annual payments.

4. He devised to his daughter, Almira, wife of J. P. Bishop, in fee, another farm, containing eighty-one acres, at sixty dollars per acre, subject to precisely similar provisions, except that the balance of the valuation was to be paid in four annual payments.

5. He devised to his son William H., in fee, "that part of my lands without buildings," containing one hundred and one acres, at fifty dollars per acre, under precisely similar provisions, except that the balance of the valuation was to be paid in six annual payments, the first to be made in three years from the 1st day of April after the testator's death."

" 6. I will and devise to my daughters Susan and Ann Elizabeth all the payments (except so much thereof as may be necessary to be appropriated to the payment of my just debts and funeral expenses in case of a deficiency of means to pay the same from my personal estate), to be made by my sons Lemuel, Jacob, Samuel and William Henry, and my daughter. Almira, said payments to be made to them or their legal representatives, to each of them in equal proportions as the payments become due; and further, I devise to my daughter. Susan one half dozen cane-bottom chairs, now in my possession; and further, I devise to my daughter Ann Elizabeth, her mother's sideboard, all of which is to be accounted for at a fair valuation, together with advancements heretofore made to each of them as part of their share of my estate at the distribution thereof."

7 and 8. He directed that the payments to be made by his devisees, should continue to be liens on their respective devises until paid, and the devisees should have possession of their tracts on the 1st day of April after his death.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

10. "It is my will and I hereby order and direct that my sons Lemuel and Jacob Samuel shall each supply Andrew Snively with six bushels of wheat, annually, in payment of my part of the annuity of wheat devised to him by Andrew Snively, deceased, \* \* \* and for and in consideration of the payment of said annuity of wheat by them, I hereby order and direct that one hundred and fifty dollars shall remain in each of the tracts of land devised to Lemuel and Jacob Samuel, respectively, and at the expiration of

said annuity, the amount so ordered to remain in said tract of land, and to be theirs respectively and exclusively, and not to be included in the aggregate amount of my estate at the distribution thereof.

\*       \*·       \*       \*       \*       \*·       .       \*       \*       \*       \*

12. " It is my will, and I hereby order and direct, that within one year from the 1st day of April next, after my decease, a distribution of my estate may or shall be made, the amount of my real and personal estate, including the advancements heretofore or hereafter made and the bequest herein made out of my personal estate to my children being ascertained, my just debts and funeral expenses being fully paid and satisfied, the residue of said amount shall be equally divided among all my children, share and share alike ; all the advancements which are charged on my books against my sons and daughters, and the amount of personal property devised to either of them, respectively, shall be accounted for by them, without interest, as so much of their respective shares of my estate, so that each of my children shall share and share alike."

He appointed his sons Lemuel, Jacob Samuel, and his son-in-law, J. Philip Bishop, executors of his will.

By a codicil, dated August 19th 1872, the testator further provided : \* \* \* " That when the aggregate amount of my real and personal estate is fully ascertained and established, that one thousand five hundred dollars shall be deducted from the same, which amount shall be equally divided between my daughters Susan and Ann Elizabeth, and the remainder thereof shall be equally divided among all my children, so that Susan and Ann Elizabeth will apparently receive each, respectively, seven hundred and fifty dollars more than any other of my children."

The aggregate of the real and personal estate of the said testator has been ascertained in the manner directed by his last will.    His executors filed a final account of the personal estate, which was confirmed 'on the 10th day of March 1874, exhibiting a balance in their hands of two hundred and seventy-four dollars and ninety-three cents, after the payment of debts and funeral expenses.    An auditor to distribute the said balance reported that the same was payable to Susan Snively, a single daughter of the testator, who resided with him at the time of his decease,. under the provisions of the Act of the 14th of April A. D. 1851, sect. 5, Pamph. L. 613, 1 Br. Purd. 416, pl. 60, which report was confirmed on the 13th of April A. D. 1874.

The plaintiffs claim that the sum of fifteen hundred dollars bequeathed in the codicil to Susan and Ann Elizabeth, is now due and payable, and that they are entitled to recover the one-half of said sum.    The defendants deny that said sum is now due and payable, but say that it is to be paid in the same manner and at

[Snively's Executors *v.* Stover *et ux.*]

the same times mentioned by the testator for payment of the instalments of the valuation-money of his real estate by the devisees thereof, in his said last will and testament. If the court be of the opinion, on this state of facts, that said sum of fifteen hundred dollars is now due and payable, then judgment to be entered in favor of the plaintiffs for seven hundred and fifty dollars, with interest from the 1st day of April A. D. 1874; but if not, then judgment to be entered for the defendants.

The court, Hall, P. J., entered judgment on the case stated for the plaintiffs for seven hundred and fifty dollars, with interest from the 1st day of April 1874.

The defendants took out a writ of error and assigned the judgment so entered for error.

*Kennedy & Stewart* for plaintiffs in error.

*J. McD. Sharpe* for defendants in error.

Mr. Justice WOODWARD delivered the opinion of the court, October 11th 1875.

Samuel Snively died on the 20th of December 1872, leaving six children, three sons and three daughters. Apart from some personal property, which was exhausted in the process of administration, his estate consisted of 412 acres of land, in Antrim township, in the county of Franklin. By his will, executed on the 15th of July 1872, he devised his real estate in four separate parcels to his sons, Lemuel, Jacob Samuel, and William Henry, and his daughter Almira. He gave to Lemuel 130 acres and 14 perches, to Jacob Samuel 100 acres and 13 perches, and to Almira 81 acres and 9 perches, the land in each case being valued at $60 per acre, and the will providing that after deducting advancements made in the testator's lifetime, the balance of the shares of the devisees should remain in the land devised to each. The remainder of the valuation was directed to be paid by Lemuel in ten equal annual payments; by Jacob Samuel in eight; and by Almira in four. The payments were to bear no interest until they became due, and the first instalment in each case was required to be paid in one year from the first day of April next after the testator's decease. The devise to William Henry was of 101 acres and 40 perches, at a valuation of $50 per acre. After deducting advancements and a bequest of personal property, it was directed that the balance of his share should remain in the land, and that the remainder of the valuation should be paid in six annual payments, without interest, the first of which should be made in three years from the 1st day of April after the testator's death.

By the sixth section of the will, all the payments on account of the lands devised, were bequeathed to the testator's daughters,

Susan and Ann Elizabeth, in equal shares. And by the twelfth section, it was provided, that within one year from the first day of April after the testator's decease, a distribution of his estate should be made, and after the adjustment and allowance of advancements and bequests, and the payment of debts and funeral expenses, the residue should be divided between all his children in equal shares.

On the 19th of August 1872, the following codicil was executed by the testator : " I do hereby further order and direct, that when the aggregate amount of my real and personal estate is fully ascertained and established, one thousand five hundred dollars shall be deducted from the same, which amount shall be equally divided between my daughters Susan and Ann Elizabeth, and the remainder thereof shall be equally divided among all my children, so that Susan and Ann Elszabeth will apparently receive, each respectively, seven hundred and fifty dollars more than any other of my children."

Upon the theory that the effect of the codicil was to render the bequest of $1500 contained in it, payable on the first day of April 1874, this proceeding was instituted by Mrs. Ann Elizabeth Stover, one of the daughters, and her husband, for the recovery of the $750, to which she was entitled under that bequest. This theory was sustained by the court below, and judgment was entered for the plaintiffs.

On the 1st day of April 1874, the entire estate of the testator, upon which the provisions of the will and codicil could operate, consisted of the lands devised and the payments directed to be made out of the valuation placed upon them. Debts, funeral expenses, costs of administration, and the specific bequests contained in the will, had exhausted the personal property. If the view of the plaintiffs and the court below is accurate, it follows that to the extent of $1500, the time fixed by the will for the payments by the devisees of the lands was materially hastened by the terms of the codicil. This is inevitable, for there is no fund outside of these payments from which the $1500 can be realized. Was it the intention of the testator to produce such a result ? He did not say so, and the implication that this was his purpose, must be founded on language that is unmistakable and distinct. No doubt would have arisen upon the provisions of the will alone. The amount of the estate being ascertained under the directions of the twelfth section, the shares in it of Susan and Ann Elizabeth would have been payable out of the valuation charged on the lands as the payments by the devisees accrued.

But how can it be said the codicil has produced a change so significant ? Its object was to increase the amount two of the testator's daughters were to receive out of his estate, and to diminish, in the same proportion, the money amounts to which, under the twelfth section of the will, the devisees of the land were entitled ; and the

[Snively's Executors *v.* Stover *et ux.*]

reason was stated to be that Susan and Ann Elizabeth should "apparently receive $750 more than any other of the children." There is nothing to indicate that any idea of accelerating any period of payment was in the testator's mind. If two clauses in a will are irreconcilable, the latter is to be adopted as the latest expression of the testator's mind; but this is not to be done, if it be possible to give effect to both consistently with the main design of the testator; nor is it to be done unless the apparently repugnant clauses have relation to the same subject-matter: Newbold *v.* Boone, 2 P. F. Smith 167. The main design of Samuel Snively in framing his will was to secure equality to his children in the distribution of his estate. The design of the codicil was to cure an inequality which it was apparent the terms of the will itself would inevitably produce. The devisees were to have immediate possession and enjoyment of their lands, and the money charged upon them was the fund to be distributed. This money was payable without interest, during varying periods, running five, nine, ten and eleven years. Upon the assumption that the testator designed that his children should be equal participants in the enjoyment of his property, it is manifest that his object could not be effected by the will as it was drawn, for a preference would be given to the four devisees, to the extent of the advantage they would derive from the immediate possession of their lands, and injustice would be worked to the two daughters to the extent of the whole interest on their shares of the estate, so long as the payments of the instalments should be withheld. It was to meet this obvious wrong that the codicil was drawn. That this was so may be satisfactorily implied from the testator's statement, that Susan and Ann Elizabeth would each "apparently receive $750 more than any other of the children." To treat the $1500 as payable at the time fixed for the settlement of the estate, would not only subvert the entire plan of the will, but would create in the opposite direction, and in favor of the daughters, the inequality against which, as they stood affected by the will, it was the design of the codicil to guard.

The construction that would enforce the payment of $1500 on the 1st of April 1874, out of the appraised valuation of the lands, would seem to require that a final settlement between the testator's children should be made at the same time. The same clause that directs "that when the aggregate amount of the real and personal estate is fully ascertained and established, $1500 shall be deducted from the same, which amount shall be equally divided between my daughters, Susan and Ann Elizabeth," directs also, that "the remainder thereof shall be equally divided between my children." Now, not a dollar could be made available under the will before the 1st of April 1875. The codicil was executed just four months before Mr. Snively's death. The administration account, confirmed on the 10th of March 1874, showed the balance of his per-

[Snively's Executors *v.* Stover *et ux.*]

sonal estate to be $274.93, which was distributed to his unmarried daughter, Susan Snively, under the Act of the 14th of April 1851.   It is a fair presumption that he knew, when the codicil was framed, that it was only from the fund charged on the lands devised that so significant a sum as $1500 could be derived.   If, in order to raise that sum, he designed that the dates of payment which he had fixed should be anticipated, he would have so directed.   Upon the theory of the plaintiffs, it would be necessary to hold that, under the terms of the codicil, the payment not only of the $1500, but of the entire volume of the valuation money was accelerated, and that the 1st of April 1874, was the date for the liquidation as well as for the ascertainment of the shares of the children in their father's estate. Unquestionably, there was no such intention in the testator's mind.   He had no design to impair the efficiency of the twelfth section of the will.   He had no other view than to increase the shares of his two daughters $750 each, a due proportion of which was to be paid to them with their due proportion of the several successive annual instalments, for which the will had made provision.   Any other construction would create absurd confusion in testamentary provisions that were intelligently conceived and accurately drafted, and which appear to be equitable, fair and just.

Judgment reversed, and judgment on the case stated for defendants.